# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK DANIEL GARCIA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:18-cv-00914-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER PROCEEDINGS<br><br>(ECF Nos. 19, 20, 21) |

## I.

## INTRODUCTION

Jack Daniel Garcia ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from morbid obesity, bilateral knee meniscal tears, thoracic degenerative joint disease, cervical degenerative disc disease, asthma, anxiety, and depression. For the reasons set forth below, Plaintiff's Social Security appeal is granted and this matter shall be remanded for further administrative proceedings.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 12, 13.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on December 10, 2014, and a Title XVI application for supplemental security income on December 12, 2014. (AR 237, 243.) Plaintiff's applications were initially denied on February 24, 2015, and denied upon reconsideration on June 30, 2015. (AR 87-118, 119-152.) Plaintiff requested and received a hearing before Administrative Law Judge Sharon L. Madsen ("the ALJ"). (AR 168-169, 170-178, 194-217.) Plaintiff appeared for a hearing on May 4, 2017. (AR 61-86.) On June 13, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 24-45.) On May 2, 2018, the Appeals Council denied Plaintiff's request for review. (AR 1-7.)

### A. Hearing Testimony

Plaintiff testified at the May 4, 2017 hearing with the assistance of counsel. (AR 61-86.) Plaintiff stated he weighed about 290 pounds but was unsure of his height. (AR 64.) Plaintiff is right-handed but injured his right hand the year before the hearing and had been working more with his left hand. (AR 64-65.) Plaintiff has two kids, ages twelve and thirteen. (AR 65.) He lives in a duplex with a roommate. (AR 65.) He does not drive. (AR 66.) His highest grade of education is a GED. (AR 66.)

Plaintiff needs help dressing at times, specifically with buttoning his clothes. (AR 67.) Plaintiff does household chores, does not cook or microwave food, but does shop. (AR 67.) He does not participate in social activities such as with a church, family or friends. (AR 67.) When asked what he does in a typical day, Plaintiff was a bit unclear, but stated he watches very little TV, and just walks back and forth inside his house and eats. (AR 67.) He takes naps at times. (AR 68.) Plaintiff stated he does not spend any time on his phone or computer, and does not use social media. (AR 68.)

Plaintiff testified he previously worked conducting lawn maintenance and landscaping. (AR 68-69.) He then worked for Marriot doing hotel maintenance, such as fixing locks, minor plumbing, and other handyman work, and then the performed the same type of work for hospitals. (AR 69.) Plaintiff stated the heaviest item he would lift when doing landscaping was

the lawnmowers which weighed approximately 40 to 50 pounds. (AR 69.) When doing maintenance, sometimes the tool bag would weigh between 40 and 60 pounds. (AR 70.)

Plaintiff tore the meniscus in his right knee and testified it feels no different than the first time he injured it, with pain, stiffness, swelling, and locking, and Plaintiff stated he will likely need surgery. (AR 70.) The knee pain stays the same, not getting better or worse. (AR 71.) Plaintiff's left knee is about the same as the right, but with not as much locking. (AR 71.)

Plaintiff's neck pain is his primary complaint, and he experiences pain, stiffness, discomfort, tension and nausea. (AR 71.) The pain in the neck starts in the center of his neck and radiates to the top of his head and all the way to his two fingers on each hand. (AR 72.) Plaintiff experiences the pain extending to the hands "[a]ll the time." (AR 72.)

Plaintiff has numbness and pain in his hands along with twitching. (AR 73.) Plaintiff's left hand has been worse, but he hasn't been able to use the right hand since he fell the previous year, with the pain from the fall focused in the palm of his right hand. (AR 73.)

Plaintiff's lower back pain goes with his neck pain, and he is unable to get comfortable and unable to sit up straight. (AR 73.) Sitting is the hardest position for Plaintiff to get comfortable in considering his neck and back pain. (AR 73-74.) Plaintiff usually takes pain medications such as Ibuprofren, Baclofen, and Cyclobenzaprine, and uses hot water and other different therapy methods to get comfortable and alleviate pain, which helps at times. (AR 74.)

Plaintiff's physical therapy helped at times. (AR 72.) As far as medical strategy for his neck, Plaintiff stated the doctors are still working it up, doing some x-rays, and his hand therapist is sending him back to the doctor to do more extensive work on the neck. (AR 72-73.)

Plaintiff suffers from asthma and uses an inhaler daily. (AR 74.) Plaintiff does not smoke. (AR 74.) Plaintiff uses a nebulizer two to three times a day. (AR 74.) The air quality can affect his asthma. (AR 74.) Plaintiff stated he has trouble breathing when he sleeps but did not confirm whether he suffers from sleep apnea stating he does not use a sleep apnea mask. (AR 75.)

Plaintiff testified he currently does not lift anything over five pounds, that he could carry a gallon of milk, but would not be able to carry a bag of potatoes because of his finger problems.

(AR 75.) Plaintiff can sit for about twenty to thirty minutes before he must get up. (AR 75.) The amount of time Plaintiff can stand before he has to sit down fluctuates between ten to thirty minutes. (AR 76.) Plaintiff can walk short distances of about one block. (AR 76.) Plaintiff has some trouble putting on shoes and socks, and climbing stairs. (AR 76.) Plaintiff does not lift his arms over his head because it aggravates his shoulder and neck pain. (AR 76.) Plaintiff does okay with picking up small things such as pencils. (AR 77.) Plaintiff has trouble hanging onto stuff and dropping things. (AR 77.) Within a couple of minutes of using his hands, Plaintiff's hands become shaky and he loses grip strength. (AR 77.)

Plaintiff testified that he suffers from anxiety daily, and that "[e]verything" makes him anxious. (AR 77.) When he gets anxious he feels panicked, his heart races, and he can't catch his breath. (AR 77.) Plaintiff stated he was experiencing such feelings during the hearing. (AR 77.) Plaintiff suffers from depression and feels very emotional. (AR 78.) Plaintiff testified he has problems getting along with people, and has received psychotherapy treatment. (AR 79.) In pyrotherapy, Plaintiff talks about his problems with stress, pain, and management of health care. (AR 79.)

When examined by his attorney, Plaintiff answered that he received psychotherapy sessions once a month, to be increased to three times per month. (AR 79.) Plaintiff attends hand therapy twice a week. (AR 79.) Plaintiff sees his primary care physician once a month, and his workers compensation doctor once a month. (AR 80.) Plaintiff experiences side effects from medicine, including lethargy, hives, and dry mouth. (AR 80.) Plaintiff confirmed that because of his asthma, it would not be a good idea to work around dust, fumes, or extreme temperatures. (AR 81.) Plaintiff confirmed he always limps because of his knee problems, and has trouble with ramps, stairs, and ladders. (AR 81.) Plaintiff has trouble with repetitive work because of carpal tunnel syndrome and shaking hands. (AR 81.) Plaintiff confirmed he has extreme difficulty remembering things, concentrating, and sticking to tasks, and thus tries to stick to simple one and two-step tasks. (AR 81.)

The Vocational Expert Michael A. Frank also testified. (AR 82-85.)

///

**B.     ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff met the insured status requirements of the Social Security Act through March 1, 2019.
- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 7, 2014.
- Plaintiff has the following severe impairments: morbid obesity, bilateral knee meniscal tears, thoracic degenerative joint disease, cervical degenerative disc disease, asthma, anxiety, and depression.[2]
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
- Plaintiff has the residual functional capacity to perform a range of light work, and he: (1) can lift and carry up to twenty pounds occasionally and ten pounds frequently; (2) is able to stand and/or walk six to eight hours and sit for six to eight hours over the course of an eight-hour workday; (3) can occasionally balance, stoop, kneel, crouch, crawl, and climb; (4) must avoid concentrated exposure to heights, dangerous machinery, dust, gases, fumes, and extremes of heat and cold; (5) is capable of simple routine tasks; and (6) can tolerate occasional public contact.
- Plaintiff is unable to perform any past relevant work.
- Plaintiff was born on July 13, 1982, and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
- Plaintiff has at least a high school education and is able to communicate in English.
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is

---

[2] The ALJ found that the Plaintiff's alleged carpal tunnel syndrome was not a severe impairment within the meaning of the Social Security Act and Regulations as the evidence did not show more than a minimal impact on Plaintiff's ability to work. (AR 30.)

1      not disabled whether or not he has transferable job skills.

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from January 7, 2014, through the date of the ALJ's decision, June 13, 2017.

(AR 29-40.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[3] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

---

[3] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. § 404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff raises three primary challenges to the ALJ's decision: (1) the ALJ erred by failing to provide a clear and convincing reason to disregard Plaintiff's testimony; (2) the ALJ erred by failing to provide a germane reason to disregard the lay witness' testimony; and (3) the ALJ erred by failing to provide a specific and legitimate reason based on substantial evidence to

reject the opinion of Plaintiff's treating physician in favor of the state agency non-examining expert. (Br. 29-36.) The Court first turns to the question of whether the ALJ erred in her assignment of weight to the physician opinions. As explained below, the Court finds the ALJ erred by rejecting the treating physician opinion and in giving great weight to the state agency physician, thus warranting a remand for further administrative proceedings, and the Court need not address Plaintiff's remaining challenges.

### A. The ALJ Erred by Failing to Provide Specific and Legitimate Reasons to Reject Plaintiff's Treating Physician's Opinion and by Assigning Great Weight to the State Agency Non-Examining Physician Opinion

Plaintiff argues that the ALJ erred by failing to provide a specific and legitimate reason based on substantial evidence to reject the opinion of Plaintiff's treating physician in favor of the non-examining state agency physician. (Br. 33.)

1. <u>Legal Standard</u>

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. <u>See</u> <u>Lester v. Chater</u>, 81 F.3d 821, 830-831 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. <u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." <u>Garrison v. Colvin</u>, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(3)). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. <u>Thomas</u>, 278 F.3d at 957.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). "The weight afforded a

non-examining physician's testimony depends 'on the degree to which [he] provide[s] supporting explanations for [his] opinions.'" Garrison, 759 F.3d at 1012 (citations omitted).

      2.    <u>The ALJ's Assessment of the Physicians' Opinions</u>

From October 27, 2016, to March 2, 2017, Dr. Calhoun examined Plaintiff in connection with Plaintiff's attempt to receive workers' compensation benefits. (AR 36, 1154-1175.) In October of 2016, Dr. Calhoun opined that Plaintiff could not perform prolonged standing, could not pull or push over ten pounds, could not lift or carry more than ten pounds, could not perform overhead lifting on the left side, required the ability to sit and stand at will, and could not perform forceful activities with the left upper extremity. (AR 36, 1156.) Dr. Calhoun found the same limitations in December of 2016. (AR 1160.)

Here, the ALJ declined to give great weight to Dr. Calhoun's opined limitations because of the following reasons: (1) "the generally unremarkable MRI of the cervical spine in January 2016 . . . showed no compromise of the neural foramina or central canal" (AR 1084); (2) the cervical range of motion improved with physical therapy (AR 1085-1097); and (3) Dr. Calhoun had not had the opportunity to review current imaging of the spine or knees prior to assigning his opined limitations. (AR 36.) The ALJ also noted that Dr. Calhoun's opinion that Plaintiff was temporarily totally disabled ("TTD") is a finding used in workers' compensation to indicate that at a certain moment for a certain period of time, a worker is unable to return to the job being performed at the time of injury, with or without modification to the requirements of the job, and emphasized that this is not the same criteria used to determine disability under the Social Security Act. (AR 37.) The ALJ concluded that the objective clinical and diagnostic evidence used by Dr. Calhoun was considered, and the ALJ found that the objective evidence was consistent with a determination that the Plaintiff could do a range of work at the light exertional level. (AR 37.)

The ALJ gave great weight to the state agency non-examining medical consultant Dr. E. Trias' opinion issued on February 12, 2015. (AR 35, 96-99.) Dr. Trias opined that Plaintiff retained the RFC to stand, walk, and sit for six hours in an eight-hour workday, could lift/carry 20 pounds occasionally and 10 pounds frequently, could frequently stoop, climb stairs and

9

1 ramps, could occasionally climb ladders, ropes and scaffolds, could occasionally kneel, crouch and crawl, and placed a restriction on concentrated exposure to respiratory irritants. (AR 96-99.)

On June 16, 2015, a second state agency non-examining medical consultant Dr. Nasrabadi opined that Plaintiff was capable of work at the sedentary exertional level and could stand/walk for two hours and sit for about six hours in an eight-hour workday, could occasionally and frequently lift/carry ten pounds, and could occasionally climb ramps/ladders/stairs/ropes/scaffolds, and occasionally balance, stoop, kneel, crouch, or crawl. (AR 35, 130-133.) While the ALJ agreed with the assessment of agency consultant Dr. Trias and gave great weight to Dr. Trias' opinion, the ALJ found Dr. Nasrabadi's assessment overly restrictive. (AR 35.) The ALJ acknowledged that Dr. Nasrabadi had access to records not available to Dr. Trias (Ex. 2F; 6F; 11F; 12F; 13F), however the ALJ found Dr. Nasrabadi's "assessment overly generous, and not well supported by objective examination findings." (AR 35.)

### 3. The Parties' Arguments

Plaintiff argues the ALJ improperly gave reduced weight to Dr. Calhoun's opined limitations for the following reasons: (1) the ALJ's reference to the January 2016 cervical spine MRI fails to consider the disc protrusion at the C6-C7 levels and the straightening of the normal curvature of the cervical spine; (2) the ALJ's reliance on physical therapy as having improved the cervical range of motion as a basis to discount the opinion is flawed as Plaintiff was discharged from therapy in August 2016 – prior to Dr. Calhoun's October 2016 opinion as to Plaintiff's limitations – due to "[m]inimal change in functional status or subjective complaints" (AR 1097); and (3) the ALJ's reliance on the fact that the Dr. Calhoun did not have the current imaging he requested does not account for Dr. Calhoun's review of previous medical records and actual examination of Plaintiff. (Br. 36.) Plaintiff also argues that the ALJ's reasons for rejecting Dr. Calhoun's opinion are further undermined by the great weight afforded to Dr. Trias' opinion when Dr. Trias never examined Plaintiff and had significantly less medical records to consider given that Dr. Trias rendered his opinion eighteen months prior to Dr. Calhoun. (Br. 36.)

1    Defendant's briefing almost entirely focuses on countering what it states is "Plaintiff's
2  suggest[ion] that when assessing Dr. Calhoun's opinion, the ALJ did not consider the section
3  404.1527(c) factors." (Opp'n 6.) However, Plaintiff did not explicitly argue that the ALJ failed
4  to consider the 404.1527(c) factors, but rather attacked three specific reasons the ALJ gave for
5  giving reduced weight to Dr. Calhoun's opinion. (Br. 34-36.) Plaintiff only mentions the
6  404.1527(c) factors in outlining the applicable legal standard. (Br. 34-36.) Below, the Court
7  notes where Defendant has countered Plaintiff's specific challenges.

   The Court now turns to Plaintiff's specific challenges to the three reasons provided by the
9  ALJ as bases for rejecting Dr. Calhoun's opinion.

### 4. The January 2016 Cervical MRI

The first reason provided by the ALJ for giving reduced weight to Dr. Calhoun's opinion was "the generally unremarkable MRI of the cervical spine in January 2016 . . . which showed no compromise of the neural foramina or central canal."[4] (AR 36, 1084.) In briefing, Defendant does not directly address the argument that the ALJ mischaracterized Plaintiff's January 2016 cervical MRI as generally unremarkable and improperly relied on such mischaracterization. (Opp'n 5-10; Reply 2-3.)

On January 7, 2016, Plaintiff received an MRI of the cervical spine. (AR 1084.) The MRI report found the "C6-7 interspace show[ed] a broad based central posterior disk protrusion which measure[d] approximately 2.0 mm beyond the adjacent posterior vertebral body margins," "a small high signal at the posterior margin of the disk on T2 and STIR thought to be consistent with a tear of the annulus," and that "the neural foramina appear[ed] preserved." (AR 1084.) The MRI report also found a "straightening of the normal lordotic curvature." (AR 1084.)

The ALJ's reliance and characterization of the cervical MRI as generally unremarkable despite the disk protrusion and straightening of the normal lordotic curvature, without a doctor or medical expert's review and analysis of the MRI to support such characterization, was not a

---

[4] In the ALJ's summary of the relevant medical evidence prior to this statement, the ALJ did state that the January 7, 2016 MRI "revealed a disc protrusion at C6-7, yet the neural foramina were well preserved." (AR 34.) However, this does not change the Court's finding that the ALJ improperly disregarded the cervical MRI as unremarkable and improperly used such determination as a reason to give less weight to the opined limitations from the treating physician.

specific and legitimate reason based on substantial evidence to reject Dr. Calhoun's opinion. While the ALJ accurately described that the neural foramina were not compromised, the comment that the MRI was unremarkable was not proper, and the ALJ's use of the MRI as a basis to reject Dr. Calhoun's opined limitations was error.

Further, the ALJ erred in assigning great weight to non-examining state expert Dr. Trias' opinion. Although the cervical MRI was considered by the ALJ, the MRI was not reviewed by the state agency physician, and thus, there is no state medical opinion addressing Plaintiff's residual functional capacity that considers the cervical MRI. It was error to give great weight to the state agency physician Trias' RFC determination when Dr. Trias did not have access to the cervical MRI. The cervical MRI may reveal or support additional limitations greater than demonstrated by the objective evidence available at the time Dr. Trias reviewed the medical evidence and thus it was error to assign greater weight to Dr. Trias' opinion over treating physician Dr. Calhoun's opinion that was issued eighteen months after Dr. Trias' opinion.

5. <u>The Improvement of the Cervical Range of Motion in Physical Therapy</u>

The second reason the ALJ gave in support of assigning reduced weight to Dr. Calhoun's opined limitations was that the cervical range of motion improved with physical therapy. (AR 36, 1085-1097.) Plaintiff argues the ALJ's reliance on physical therapy as having improved the cervical range of motion is flawed because Plaintiff was discharged from therapy in August 2016 – prior to Dr. Calhoun's October 2016 opinion as to Plaintiff's limitations – due to "[m]inimal change in functional status or subjective complaints." (Br. 36.) Defendant argues that the ALJ properly noted that Plaintiff's record reflected conservative and effective treatment including the fact that the record showed Plaintiff's range of motion in the cervical spine improved over the course of twelve physical therapy sessions between May of 2016 and August of 2016. (Br. 7 citing AR 1087, 1096.)

On May 27, 2016, Plaintiff had an initial examination to begin physical therapy and presented with the following range of motion results: forward bending 20 degrees, backward bending 40 degrees, right rotation 60 degrees, left rotation 60 degrees, right side bending 25 degrees, and left side bending 35 degrees. (AR 1085-87.) On June 14, 2016, Plaintiff was

documented with the same range of motion limitations as May 27, 2016, and the form notes "[m]inimal change with 3 visits." (AR 1090.) On July 19, 2016 Plaintiff was documented with the same range of motion limitations as the previous two dates and the form notes "[m]inimal change with 7 visits." (AR 1092-93.) On August 16, 2016, Plaintiff's range of motion was documented as having improved as follows: forward bending improved from 20 to 50 degrees, backward bending improved from 40 to 50 degrees, right rotation improved from 60 to 70 degrees, left rotation remained unchanged at 60 degrees, right side bending improved from 25 to 45 degrees, and left side bending improved from 35 degrees to 55 degrees. (AR 1096.) The August 2016 form also states that Plaintiff's rehab potential is good, however also states Plaintiff was discharged from physical therapy because of "[m]inimal change in functional status or subjective complaints." (AR 1096.)

While the ALJ's statement that Plaintiff's range of motion showed an improvement over the course of the twelve sessions, taken in isolation, is an accurate statement, the ALJ's reliance on such fact as a basis to reject Dr. Calhoun's opinion was not a specific and legitimate reason supported by substantial evidence. (AR 1087-1096.) Defendant's briefing does not directly address the fact that Plaintiff was discharged from physical therapy because of a minimal change in functional status, and does not address the fact that the physical therapy was conducted months prior to when Dr. Calhoun issued his opined limitations in October of 2016. Here, the ALJ selectively cited one day of documented improvement of the range of motion over the twelve sessions of therapy, while not explaining the fact that the physical therapy records demonstrated no improvement over the majority of the sessions, and that Plaintiff was discharged because of minimal improvement from the therapy. See Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) ("In concluding that the most recent medical evidence indicates that Holohan was improving, the ALJ selectively relied on some entries in Holohan's records from San Francisco General Hospital and ignored the many others that indicated continued, severe impairment."); Morales v. Berryhill, 239 F. Supp. 3d 1211, 1216 (E.D. Cal. 2017) ("The mere occurrence of 'some improvement,' does not undermine a treating physician's opinion that their patient's impairments render him unable to work."). The ALJ likewise did not address the

fact that Dr. Calhoun's opinion was issued after the conclusion of the physical therapy sessions.

Because this proffered reason for assigning reduced weight to Dr. Calhoun's opinion was not a specific and legitimate reason supported by substantial evidence, the ALJ erred.

      6.      <u>Dr. Calhoun's Inability to Review Current Imaging Results</u>

The third reason provided by the ALJ for rejecting Dr. Calhoun's opinion was that Dr. Calhoun had not had the opportunity to review current imaging of the spine or knees prior to assigning his opined limitations. (AR 36.) Plaintiff argues that this rationale does not account for Dr. Calhoun's review of previous medical records and actual examination of Plaintiff. (Br. 36.) The Defendant does not directly address Plaintiff's challenge to this reason provided by the ALJ. (Opp'n 5-10.)

The ALJ found the fact that Dr. Calhoun didn't have current imaging of the spine and knees "noteworthy" in assigning reduced weight to the opinion issued in October of 2016. (AR 36.) Yet the ALJ assigned great weight to Dr. Trias' opinion issued in February of 2015, at a time when Dr. Trias did not have access to the January 2016 MRI or the remainder of Plaintiff's medical records from after February of 2015 until the time Dr. Calhoun provided his opinion in October of 2016, an interim period of approximately eighteen months. On the other hand, Dr. Calhoun examined Plaintiff on October 27, 2016, December 15, 2016, December 20, 2016, January 19, 2017, January 31, 2017, and March 2, 2017, with access to Plaintiff's medical records from before such dates. (AR 1154-1175.) Additionally, in assigning greater weight to non-examining agency consultant Dr. Trias over another non-examining agency consultant, Dr. Nasrabadi, the ALJ acknowledged that Dr. Nasrabadi had access to numerous records that Dr. Trias did not have access to, and nonetheless gave greater weight to Dr. Trias' less restrictive opinion. (AR 35.) The ALJ does not explain why the absence of such records for Dr. Trias to review did not impact the great weight afforded to his opinion, yet the absence of imaging requested by Dr. Calhoun, nearly eighteen months after Dr. Trias' opinion, is noteworthy as a factor in assigning reduced weight to Dr. Calhoun's opinion despite the fact that Dr. Calhoun had significantly more medical records to review, in addition to personally examining the Plaintiff.

Given Dr. Calhoun had access to a more complete medical record than the agency

1 physicians, and the ALJ's unexplained inconsistency in the assignment of weight to the opining
2 physicians based on the physician's relative access to medical records, the ALJ's rejection of Dr.
3 Calhoun's opinion for this reason is not a specific and legitimate reason based on substantial
4 evidence and was error.

**B. Because the ALJ's Error was not Harmless the Court need not Address Plaintiff's Other Arguments and Remand is Appropriate**

Plaintiff argues the ALJ's disregard of Dr. Calhoun's medical opinion was not harmless error because if the opinion was credited, a different disability determination could have been reached. (Reply 5.) Plaintiff notes that Dr. Calhoun opined in October of 2016 that Plaintiff could not perform repetitive forceful movements with his left arm, and in March of 2017, Dr. Calhoun's clinical findings included Plaintiff's left wrist pain with restricted range of motion. (AR 1160, 1172.) The vocational expert testified that available work would be eliminated for an individual with the RFC as assessed by the ALJ if they were limited to using their arms on an occasional basis for handling and fingering. (AR 84.) Defendant does not specifically address whether any error is harmless in briefing. The Court cannot find such error harmless and agrees that a different disability determination could have been reached if Dr. Calhoun's opinion were credited. Because the Court finds the ALJ erred in rejecting treating physician Dr. Calhoun's opined limitations and in assigning great weight to non-examining state agency physician Dr. Trias' opined limitations, and because such error was not harmless, the Court will not address Plaintiff's remaining challenges to the ALJ's findings concerning Plaintiff's credibility, and the lay witness credibility.[5]

Plaintiff does not request the Court remand for an award of benefits but only seeks remand for further administrative proceedings. (Br. 32, 36-37.) The Court agrees that remand for further administrative proceedings is appropriate.

---

[5] While not addressing Plaintiff's challenge to the credibility determination, the Court reminds Defendant that to "discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying 'which testimony [the ALJ] found not credible' and explaining 'which evidence contradicted that testimony.' " Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017) (quoting Brown–Hunter v. Colvin, 806 F.3d 487, 489, 494 (9th Cir. 2015) (emphasis in original) (alteration added by quoting source).

1       The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which
2 must be satisfied in order for a court to remand to an ALJ with instructions to calculate and
3 award benefits: (1) the record has been fully developed and further administrative proceedings
4 would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for
5 rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly
6 discredited evidence were credited as true, the ALJ would be required to find the claimant
7 disabled on remand." Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). The credit as true
8 doctrine allows "flexibility" which "is properly understood as requiring courts to remand for
9 further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an
10 evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled.
11 Garrison, 759 F.3d at 1021.

12       The Court finds that based on the ALJ's opinion and the Court's review of the record,
13 serious doubts exist as to whether Plaintiff is in fact disabled due to his physical impairments.
14 Here, the ALJ afforded great weight to the opinion of the non-examining agency physician in
15 developing the residual functional capacity assessment. However, no agency physician opined
16 on Plaintiff's physical abilities following the most MRI results and there is no agency opinion
17 remaining in the record that addresses Plaintiff's physical abilities based on the more recent
18 testing and objective findings. Further administrative proceedings would be useful for a
19 physician to consider the new MRI results in determining Plaintiff's residual functional capacity,
20 in addition to allowing for review of medical records not available to Dr. Trias when his opinion
21 was issued nearly eighteen months prior to Dr. Calhoun. Upon remand the ALJ shall obtain
22 additional medical opinion evidence as to Plaintiff's physical functioning from a consultative
23 examiner or a medical expert, and further develop the record as deemed necessary.

24       The Court orders this action remanded for further administrative proceedings consistent
25 with this opinion.

26 ///
27 ///
28 ///

# V.

# CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ erred in failing to provide specific and legitimate reasons supported by the record for the weight provided to the treating physician opinion in relation to the state agency physician. Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Jack Daniel Garcia and against Defendant Commissioner of Social Security. The Clerk of the Court is DIRECTED to CLOSE this action.

IT IS SO ORDERED.

Dated: __**July 19, 2019**__

_____
UNITED STATES MAGISTRATE JUDGE